The next case today is Kevin Carrozza v. CVS Pharmacy, Inc. Appeal Number 191716. Mr. Grady, when you are ready. Thank you. Good afternoon, members of the panel. I am Albert Grady of Brockton, Massachusetts, attorney for the plaintiff, appellant Kevin Carrozza. Judge Howard, with your permission, I'd like to reserve two minutes for rebuttal. Yes. Thank you. Case starts in the Brockton District Court, entered there in October of 2017. Removed to the federal court here in Massachusetts  A three count complaint by plaintiff after an incident which occurred on April 22, 2015, namely his consumption of Levaquin on a prescription filled by defendant CVS. Nine days later, 93A demand for relief was sent out and suit entered two years later, as I mentioned. The negligence theory is advanced in one count, product liability in the second, and Chapter 93A, which would be Section 9, the Consumer Protection Act, in the third count. Unlike the last case, Your Honor's heard where the clearly erroneous standard applies. In this case, it's a de novo hearing with both parties having a fresh start before this court with inferences from evidence per law to be decided in favor of plaintiff. Matter starts with a prescription of Levaquin, which is a quinolone by a Dr. Despinis for a minor ailment described in the papers both as sinusitis and elsewhere as a head cold. To the pharmacy at CVS... Counsel, you can assume that we're familiar with those facts. Why don't you move to the issues? A centerpiece for the plaintiff's presentation is the case of Korea, which is exhibit number F in the record at 831. It was attached to the plaintiff's opposition to summary judgment motion below. When this case started, there was the Cottom decision out there, which is Cottom versus CVS. Both cases are cited extensively in plaintiff's brief and reply brief. And Cottom held the proposition that the pharmacist, in terms of a duty... And there, the court did not decide the issue that Korea decided because the court decided it based on duty assumed. And there is evidence in the case at bar that would promote a duty assumed decision here also, namely in Carozza's affidavit that CVS had informed him that he was allergic to sulfur, but never informed him that he was allergic to levoquin quinolones. As a matter of fact, both in his supposition and in his affidavit, he testified that he did not know what a quinolone was in April of 2015. It wasn't until after discovery. In this case, that he personally learned what a quinolone was and that levoquin was of that category in that family. He had the consumption of the levoquin on the day of fulfillment of the prescription and was then taken the next day to Martin Hospital, where he broke down and there was a suspicion of what is known as Stevens-Johnson's syndrome. And that's a syndrome that can be quite severe and causes headaches and blistering of skin. There is a disclosure in the October 2018 filing by plaintiff, which is a second disclosure under Rule 26B, not confined just to experts, but in the second disclosure, there is a disclosure of the Korea case. And you can see it in the record appendix where the plaintiff sets forth that he intends to use the Korea case to impose liability on CVS based on the holding in Korea, which was that there is a duty to not just notify the patient, but to notify the pharmacist that is imposed. It would be really the evolution of a common law duty pronounced by the appellate court as a result of the changes in society. And pharmacies taking an important role in the total team effort for patient care, from prescribing doctor to fulfilling pharmacist. And on page 17, the Korea court notes, it's 16 years earlier when the Supreme Judicial Court of Massachusetts decided that Carton left open the legal duty on whether a pharmacist failed to act on specific knowledge the pharmacist possessed regarding danger to a particular customer. Plaintiff says that that fits square with what took place here because the pharmacist claims, a gentleman by the name of Wasoski, that he saw in the computer a disclosure in 2009 that the plaintiff said that he was not allergic to quinolones. There's a conflict in the evidence on that to certain in terms of the plaintiff's testimony affidavit that he did not know what a quinolone was at that time and never could have said such a thing. So the issue is whether there is credibility, first of all, with respect to the subject of a CBS person asking a lay person about whether they're allergic to quinolones. When the record will show before that, that quinolones, namely this very one, lepequin, had caused the plaintiff to break out an allergy. Now, it's undisputed in the evidence, Your Honors, that there were four warnings that CBS had particular to Mr. Carrozza. One was called a hand stop. The other three were called soft stop warnings. And you'll see within the materials on the Rule 56 that the three soft stop warnings were troubling in and of themselves. And the soft stop warnings say caution. And two of the soft stop warnings are in connection with other medications that Mr. Carrozza was taking. The third was based upon his condition. And that condition had to do with his cardiac situation, which is separate in part from what is a hand stop warning. Which a hand stop warning, the argument is, is just do not give it. And the hand stop warning is that Mr. Carrozza is allergic to quinolones. And it's the testimony of the pharmacist  but then also saw this unidentified, that is without an author, so-called entry in the computer. There's no evidence that the computer information is date stamped to assure that it was in there in 2009 or any time before the fulfilling of this prescription. And that as a result of reading that, he made the unilateral decision without consulting Mr. Carrozza, without giving him a printout of those warnings, nor did he consult with Dr. Despinis, the prescribing physician. And there was evidence in deposition testimony. Now, this testimony was stricken under the Dalbert decision by the justice below. And it is claimed by the plaintiff. And the thesis of that exclusion was that the expert, an allergist of 40 years experience, because Stevens-Johnson syndrome is rare, he was aware of it, but did not have sufficient on-hand experience with such cases. And there was also an issue of the standard of care of a pharmacist. Well, the expert, Dr. Backman, testified that as an allergist all these years, it is common occurrence for pharmacists to call him up and he'll change prescriptions. And in this particular case, there was no outstanding reason for the minor malady that Mr. Carrozza was experiencing, namely the head cold or sinusitis, to prescribe a Quinlun. There was a substitute medication that could have been prescribed that would have obviated all four, the three soft stop and the one hard stop warning. For reasons only known to the pharmacist, he decided to keep it within the cloister of CVS. Now, noted in the career decisions, and by the way, in Cotton, 16 years earlier, they called the person receiving the dispensing of the medication, the customer, and they changed it in Korea to the relation that the pharmacist has to the patient. And Korea cited 94C21A, requiring the pharmacist to offer counsel to the patient, quote, for purposes of medical assistance, never done in this case. Let me interrupt you there, counsel, and ask whether the panel has any questions at this point in time. I'm good. I don't know. All right. So you've reserved some time. We'll hear from Mr. Mahoney, and then we'll see where the argument takes us. Thank you so much, Mr. Grady. Thank you, Your Honor. Mr. Brady, you can mute your video as well as your audio. Thank you. Yes, Mr. Mahoney. Good afternoon. May it please the Court. I'm Ted Mahoney. I represent CVS. There are two motions that were decided by the lower court that are at issue with the court. And although they were separate motions, they are intertwined. The first motion was a motion brought by CVS to preclude plaintiff's identified expert, Dr. Backman. And on that, which was allowed, and on that issue, the standard review, I believe, is whether there was an abuse of discretion in deciding that motion. The lower court decided that Dr. Backman's offered testimony would be excluded for several reasons. One was his limited knowledge of the underlying record. The second reason was his lack of familiarity with the standard of care of a pharmacist. And the third was due to his lack of familiarity with damages in general and Stevens-Johnson syndrome in particular. And what the court ruled was that it is manifestly clear that Dr. Backman is not qualified to offer an expert opinion on either the appropriate standard of care for a pharmacist or whether corrosive consumption of Levaquin causes injuries, particularly alleged Stevens-Johnson syndrome. That is the role of the lower court to make those judgments. And this court laid out its rationale for allowing the motion. Now, once that motion was allowed, I would suggest that the summary judgment decisions this court made flowed naturally from that. That of course would be reviewed on a standard of de novo review. There were three counts in the complaint. One was a count for negligence, one for breach of warranty and one for 93A. Taking the breach of warranty first, what the lower court concluded was that a pharmacy is not subject to a breach of warranty in Massachusetts because it is a service that the pharmacist provides as opposed to a sale. The test in Massachusetts is whether a transaction is more of a service with goods incidental or more of a sale with labor incidental. I think you cite to some district court opinions in support of that proposition. Is there any First Circuit case on point? I have not found a First Circuit case on point, Your Honor. I did find not only the Cottom case, which of course is a state court case, but also the code of Massachusetts regulations, which in defining dispensing means that the physical act of delivering a drug to an ultimate user pursuant to a lawful order of a practitioner is a professional judgment of the pharmacist. I would suggest that professional judgment goes hand in hand with the fact that it is a service being provided by an educated and licensed pharmacist. Second, in the Cottom case, which was the case that said that there had been a duty assumed in those circumstances, the Massachusetts SJC said there is good reason to treat pharmacies differently from other retailers of commercial products. And the Cottom case focused on the fact that the pharmacist does not choose which product to make available, that patients don't choose which products to buy, that pharmacists don't have discretion to alter or refuse to fill a prescription based on an analysis of the risks and benefits of that. So I think that there are certainly, in the regulations in Massachusetts as well as in the Supreme Judicial Court decisions, distinctions being drawn between service and sale in both of those regulations as well as the SJC. In addition, and as we've cited and as the court below cited, there are many states that have considered this issue and are in accord, California, Maine, South Carolina, New York Federal Court applying Mississippi law, Connecticut, Arkansas, all who have considered it have said that what a pharmacy does is a service and therefore is not subject to product liability in most states here, breach of warranty, of course, here in Massachusetts. And there are several reasons, I don't need to go into them, they're in the brief, but several reasons where that distinction is made where this is a service. If that is the case, then the breach of warranty statute in Massachusetts, which requires a sale to invoke it, would not be applicable and summary judgment would be appropriate. The other courts talk about public policy, but what they all emphasize is that there is still a course of redress, which would be, of course, a negligence claim. But the negligence claim here, the lower court ruled appropriately, requires that there be some expert to testify that they are familiar with the standard of care of the average pharmacist and in their opinion, the standard of care was breached. Interestingly, the Korea case, which was also a case involving a summary judgment, the plaintiff in that case did have an expert prepared to testify that the failure to notify a prescriber and the patient of a requirement for authorization was a breach of the standard of care of a pharmacist. So they did have that. The plaintiff here does not have that in terms of necessary. I would suggest that, and the lower court concluded, that it is beyond a layperson's knowledge to understand what a pharmacist does and the judgments they make. Here, for example, a hard stop warning, which is not a mandate not to give the prescription, it's a mandate to look further into what is going on with this particular patient, that what the pharmacist did here was indeed to look further into the file, note that there was a note indicating this patient was not allergic to quinolones, and also noted that he had been prescribed quinolones since that time. And CVS's position is that is within the accepted standard of care and the plaintiff does not have an expert who will testify that indeed it was a breach of the standard of care. The 93A claim, which is the third comment. Sorry, I was mismuted. On the narrow point, there's two different actions the pharmacist could be understood to have taken. One is dispensing the drug that caused the reaction. The other is, in a way, a failure, which would be, even while dispensing it, not notifying the patient of the evidence in the CVS records of him potentially having the allergy to it being a quinolone or identifying as a quinolone. Is it clear that you need an expert as to both of those things? Because the one thing that's just a little harder for me to see is what is the reason for not, when the pharmacist has in their records evidence of the patient having been flagged for the allergy, not informing the patient of that fact. The two part answer to that question, number one is the lower court ruled that there was not a failure to warn case here because it hadn't been pled. But putting that aside for purposes of your question, I still think that that judgment of whether, number one, you're gonna fill the prescription, or number two, you are going to affirmatively tell a patient about this issue, I still think that goes beyond what a lay person would recognize or be able to determine is standard of care for a pharmacist. I understand what you're saying, why not would be the question, but I still believe that when you talk about whether there's been negligence on the part of a pharmacist even for a failure to do that, if that's the question, that that would require someone familiar with the standard of care, what pharmacists do in those situations. Okay, and on that second point, when you referenced that the SJC decision, you said they had a pharmacy, they had an expert there. The Korea case. Is it the Korea case? Yes. I forget, did the SJC rely on the fact that there was an expert there for its ruling? I can't say that. I can say that in its description of the proper testimony of the plaintiff in that particular case, they noted that there was an expert prepared to testify and had given an affidavit for the summary judgment of what the standard of care required. With respect to this point about the notification? It was with respect to the notification in that case of the need for an authorization from the practitioner, from the doctor, for them to fill the prescription. And is the, with respect to the district court's finding here I guess we call it a finding, that there was no failure to warn here, that's just based on a reading of the complaint as not seeing it as embedded? Or is that a, we're at summary judgment, I guess I'm just trying to figure out, how do you make it about whether there is a failure to warn claim present at the standard that we're, at the stage of litigation that we're at? Yeah, he indicated that there was no failure to warn that had been brought up as part of the summary judgment. That's what the lower court said. The reading of the amended complaint clearly does not include any language that could be suggesting that they're talking about a failure to warn. It certainly does include language that it was improperly dispensed. When you move, it's your motion for summary judgment that resulted in the grant that we're reviewing? Yes. Did you address a failure to warn claim in your motion for summary judgment? I'm trying to think in our motion itself, I would say that at that point in time in the proceedings, we were aware of, not from an amended complaint, not from a request to amend, but we were aware that plaintiff was going to say that there was a failure to warn. At that point in time that we brought it, I can't remember, I apologize, I can't remember whether it was specifically addressed in the brief. So the third count was of course the 93-A case. And what the lower court said about the 93-A case was that we're finding no breach of warranty, no negligence, and so that count fails right there. But I would suggest that even if negligence were established that that would not in and of itself support a 93-A claim and cite to the Darvivas versus Petros case, which says a physician, even if that physician is negligent, that does not in and of itself result in a viable 93-A claim without some entrepreneurial or business aspect of the claim. So thank you, Mr. Mahoney. I'm sorry, can I ask one quick question? Of course. Sorry. Again, this is just sort of a point of law point. With respect to the amount set forth in the demand letter, Yes. there are various district court opinions, including one apparently in Massachusetts, which basically stand for the proposition that the amount set forth in the demand letter suffices for determining the amount in controversy and diversity claims. Are you aware of any First Circuit case on that issue? The one decision I am aware of, actually, there are two, I believe. One is Spielman, which talked about attorney's fees that are awarded by statute can be considered. The second case, I believe is a First Circuit. It's out of Maine. I don't think it's a state court case. I think it's a federal, it must be a federal court case. It's obviously where it talks about the demand being a relevant evidence, the amount of controversy. That case is called Dowdy, D-O-U-G-H-T-Y. The other case is Spielman, S-P-I-E-L-M-A-N. Both First Circuit. Thank you. Are those cited in your brief, counsel? I think the answer to that is yes, Your Honor. Okay. If they are not, can you just submit the sites to us with a 28-J letter, a Rule 28-J letter? I will, Your Honor. Thank you. Further questions? No, thank you. All right, we'll hear from Mr. Grady. Mr. Grady, if you could unmute your audio and video for your rebuttal time. I apologize, that was my error. Can I be heard now? Yes. Thank you. In the Korea case, there was no linkage to expert testimony as a peg for establishing a duty. A duty is a societal determination that is made by the judge that springs from the common law. And of course, it's most appropriate to the appellate court so that there is an even handling of the similar cases in the trial courts at this pronouncement. Could you just address the district court's finding highlighted by your opposing counsel that the failure to warrant a claim wasn't in the complaint and wasn't part of the summary judgment proceedings? Yes, Your Honor. First of all, all that the plaintiff knew at the start of the case was that there was alleged negligence in terms of the distribution of the Levaquin to him, as it had been found that he had been given Levaquin before by CVS back in 2008. So, what happened is, it was in, as I mentioned, the cloister of CVS that they had the hard stop warning, hard stop sounds rather definite to me, and the three soft stop warnings within their computer information. And this was discovered in discovery. There's an affidavit of Dr. Foster, a second expert that I'd like to speak to, who is also a client of counsel for CVS, the law firm and Mr. Mahoney's co-counsel who argued the motions in the court below. And that posed certain issues, but the plaintiff also wished to use Dr. Foster as an expert, particularly in light of the Daubert rulings by the judge below. But here, I think is the overarching one. First, some smaller points, that within the penumbra of negligence is you should not have distributed the medicine. And then if you say, well, what could I have done? You could have called the doctor, you could have notified the patient, you could have given some kind of warning. That's part of negligence. But I submit you're on, it becomes different on the product liability thesis in that you can have a, you say the product is defective by virtue of a failure to warn. So it performs the functions that it's supposed to, but it endangers somebody's hand in the use. And did you warn of it? Did you adequately warn of it? Plaintiff here says that it was totally information contained that the defendant was aware about, that the warning that they had, they didn't need any notice about that. They had them right from the get-go of the incident. And they had it throughout the litigation. But I would say the extra step that the plaintiff went to is contained in the October 2018 disclosure, not only of the principle of Korea, but a citing of the case in Korea that is filed in court with a copy electronically served on counsel that Korea is going to be used, having been decided that June to hold liability as this CBS. Now, in terms of the establishment of a duty, it goes back, it harkens back to Cardem where you do not need an expert. It's a lay question for the jury as to the sufficiency of the duty. Here, it's a question, is it fulfilling a sufficient duty to say nothing when the command of Korea in 2018, and by the way, there's no question it applies to this incident because Korea was a 2009 incident of the pharmacy. And in that instance, Your Honors, that what the Korea court said is, and it's about a quote, it is not sufficient to just notify the patient. The doctor also must know, excuse me, the pharmacist must also notify the doctor. And here- Excuse me, counsel. Additional questions from the panel? None for me, thank you. All right, very good. Thank you very much. Thank you, Your Honors. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.